IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30911
_____


RONNIE ISAAC,

Petitioner-Appellant,

versus

BURL CAIN, Acting Warden,
Louisiana State Penitentiary,
and RICHARD P. IEYOUB, Attorney
General, State of Louisiana,

Respondents-Appellees.

_____

Appeal from the United States District Court for
the Eastern District of Louisiana
(95-CV-1002-E)
_____

May 31, 1996

Before REAVLEY, KING and EMILIO M. GARZA, Circuit Judges.

REAVLEY, Circuit Judge:[*]

Isaac was convicted in Louisiana for the armed robbery of a
grocery store and sentenced to 99 years imprisonment at hard
labor, without the benefit of probation, parole, or suspension of
sentence. His conviction was affirmed by a Louisiana appellate

_____

[*] Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

court.[1]  His further remedial writs and post conviction relief were denied by the Louisiana Supreme Court.[2]

After two unsuccessful petitions for habeas corpus were dismissed without prejudice, Isaac filed the instant petition in March of 1995.[3]  The district court adopted the magistrate's recommendation to dismiss the petition with prejudice and issued a certificate of probable cause for Isaac to appeal.  Isaac raises only two issues on appeal--whether the prosecution withheld exculpatory evidence and whether he received ineffective assistance of counsel.  We sustain the latter complaint.

Four armed men robbed the Safari Super Market located near the St. Bernard Project in the Orleans Parish, Louisiana. Approximately $15,750.00 in cash and $1,400.00 in jewelry were stolen from the customers, employees, and the store's cash registers and vault.  The four men fled to the nearby project. Acting on a tip, the police arrived at 4005 Jumonville.  After a brief stand-off, the three men (Randall Moss, Darrell Green and Isaac) inside the house surrendered.  The men were returned to the crime scene "where they were identified by the victims."[4] The search of the residence would later turn up a .38 caliber gun

---

[1]State v. Isaac, 487 So.2d 565 (La. Ct. App. 1986).

[2]State v. Isaac, 530 So.2d 80 (La. 1988); State ex. rel. Isaac v. Smith, 580 So.2d 919 (La. 1991).

[3]28 U.S.C. § 2254.

[4]Isaac, 487 So.2d at 567.

and $255.00 in cash.  The fourth suspect was arrested the next day.

Isaac asserts the prosecution withheld a supplemental police offense report which contained exculpatory information in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).  The offense report indicated that the witnesses and victims to the offense failed to identify Isaac in the police line-up at the crime scene the evening of the robbery.  The offense report did note, however, that Isaac matched the description given by one of the witnesses.

Isaac cannot successfully argue that the police withheld their report from him.  At Isaac's preliminary appearance a police officer testified specifically that the witnesses at the crime scene positively identified Moss and Green, and that Isaac matched the description given by one of the witnesses which was noted on his "scene investigation."[5]  The record also indicates that Isaac was made aware of the identification problems of one of the witnesses at a later suppression hearing.[6]  "[W]here the defendant's own lack of reasonable diligence is the sole reason for not obtaining the pertinent material, there can be no <u>Brady</u> claim."[7]  Only a lack of reasonable diligence on counsel's behalf

---

[5]Preliminary Hearing Transcript p. 4.

[6]<u>State v. Isaac</u>, No. 302-719 Section "I" (delivered August 6, 1992) (State court found after writ hearing that Isaac was aware of lack of positive identification of him at the preliminary and suppression hearings).

[7]<u>United States v. Ellender</u>, 947 F.2d 748, 757 (5th Cir. 1991).

can explain not obtaining the supplemental police report or failing to investigate the statements made at the preliminary and suppression hearings.

Isaac also contends his counsel was ineffective for failing to impeach the witnesses' identification of him with the supplemental police report.[8]  In order to prevail, Isaac must prove that counsel's representations fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense.[9]  The later prong "requires showing that counsel's errors were so serious as to deprive [Isaac] of a fair trial, a trial whose result is reliable."[10]  Our examination of counsel's performance is highly deferential, focusing on the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."[11]

---

[8]Isaac asserts that new counsel was afforded only three days (including the weekend) preparation time prior to trial.  The record indicates that his counsel changed between the end of November, 1984, and his trial the second week in January, 1985. The record is unclear as to why or when the change occurred. However, Isaac did object and his new counsel filed a motion to withdraw before and during trial.  Those motions were denied.  As will be illustrated, the sudden appointment of substitute counsel is not relevant to our disposition here today.

[9]Strickland v. Washington, 466 U.S. 668, 686-87, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

[10]Id., 466 U.S. at 687, 104 S.Ct. at 2064.

[11]Id., 466 U.S. at 689, 690, 104 S.Ct. at 2065, 2066.

4

Three eye-witnesses testified at trial as to the identity of Isaac as one of the robbers.[12] The first, Mr. Akkawi, testified that the person who robbed him was a regular customer that he recognized. He described the robber as having a round earing in the right ear, approximately 5' 8", with a beard. When asked by the prosecutor if Mr. Akkawi could identify the defendant in the courtroom, he initially indicated that he could not, but a moment later he identified Isaac. Another witness, Mr. Amari, testified that four individuals were brought back to the store for them to identify, and that he was able to identify two of them, including the one that held a gun on Mr. Akkawi whom he identified as Isaac. Mr. Amari also testified that Isaac was a regular customer. Finally, Mr. Abdelraham testified that while he was unable to identify Isaac as the robber during the line-up, he remembered Akkawi and Amari identifying him.

A supplemental police report was filed by detectives Steinkamp, Gifford, Reynolds, Rodigue, and Thomas. The report noted that the individual who robbed Mr. Akkawi was described by him as an "Unknown negro male, 35, 6'1", 200 lbs., medium build, brown complexion, medium hair, wearing a gold earring in his right ear in the shape of a circle, neat blue jeans, armed with a large caliber blue steel hand gun."

_____

[12]Two officers testified as to whether Isaac was identified by the eye-witnesses. Officer Morgan testified that Isaac was identified as one of the perpetrators of the armed robbery. Detective Gifford, the officer who conducted the line-up, testified that Isaac was "tentatively identified."

When Moss, Green and Isaac were brought back to the store after the robbery, Detective Gifford had the three stand against a wall so that the victims and witnesses could identify them. The supplemental police report stated the following:

> Det. Gifford had [Akkawi] view the subjects first. [Akkawi] after viewing the three suspects, identified [Green] and [Moss] as two of the perpetrators.

> Next to view the three suspects was [Abdelraham.] After he viewed the three suspects, he also picked and identified [Moss] and [Green] as two of the perpetrators of the armed robbery. [Abdelraham] added that [Green] was also the person who attempted to shoot him and also took his wallet and jewelry.

> Last to view the three suspects was [Amari.] After he viewed the three suspects he also picked and identified [Moss] and [Green] as two of the perpetrators. He added that [Green] was the person who beat him with the gun and removed the money from the safe.

> The detectives noted that Isaac although not identified by the victims and witnesses, matched the physical description given of him as one of the perpetrators. This description was given by [Akkawi] and included the gold earing that Isaac was wearing.

The testimony of all three witnesses contradicted, in some manner, the police report and the testimony of the detective who conducted the line-up. Nevertheless, the witnesses and the police were never questioned concerning the discrepancies. The record clearly indicates that the identification, either in-court or on the eve of the robbery, was crucial to the state's case.

The only two eye-witnesses who were able to identify Isaac at trial as one of the robbers testified that they identified him at the crime scene line-up; however, the supplemental police report notes that neither of the witnesses positively identified him at the line-up despite their trial testimony that he was a

6

"regular customer."  The only identification of Isaac was predicated on the description given by Akkawi.  No other witnesses identified Isaac as one of the robbers.  Counsel's performance fell below an objective standard or reasonableness, and the failure to inquire concerning the inconsistencies in the witnesses testimony and the police report raises concerns that the verdict may not be reliable.  The judgment of the district court is reversed, and the case is remanded with instructions to grant the writ conditioned on retrial.

REVERSED AND REMANDED.